**George T. WADE et al., Plaintiffs,**

v.

**Oscar J. LANE, Defendant.**

**Civ. A. No. 745–59.**

United States District Court
District of Columbia.

Nov. 28, 1960.

Denver H. Graham, Laurence T. Scott, Brault & Graham, Washington, D. C., for plaintiffs.

Howard J. McGrath, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

This cause is before the Court now on plaintiffs' motion for a new trial,[1] made following a jury verdict [2] for defendant.

---

**1.** Pursuant to Rule 59, Federal Rules of Civil Procedure, 28 U.S.C.A.

**2.** The jury having indicated to the Court that it was unable to reach a unanimous verdict, both sides consented to a major-

Plaintiffs contended on the trial of this action that on the morning of February 11, 1958, the defendant negligently allowed his automobile to make contact with the rear of a vehicle immediately in front of it in a line of traffic—the second vehicle being an ambulance taking "outpatients" to D. C. General Hospital and male plaintiff, acting as "attendant", being a passenger in its front seat—and that such contact proximately resulted in back injuries to male plaintiff and loss of consortium to his wife.

■ Defendant's own testimony having established that contact between the two vehicles did come about through his negligence, there was no question of his liability to plaintiffs for any injuries which proximately resulted, and the Court so instructed the jury.

There was a sharp dispute between the parties whether any injuries did, in fact, proximately result. Plaintiff, though admitting he had suffered several previous back injuries, contended that these had all cleared up by the time of this accident, and that new injuries—specifically an initial back strain causing pain and suffering and resulting in a 20% permanent partial back disability—were directly attributable to it.

Defendant, on the other hand, contended that the contact between the automobiles which constituted this accident was too slight to cause any injuries, and that any injuries which doctors might have found subsequently were residuals from plaintiff's prior accidents.

Resolution of these contentions was particularly dependent on the trier of fact's evaluation of witness credibility, because all the claimed injuries, pain, and suffering were subjective, that is, dependent on the accuracy of the defendant's complaints to his examining physicians, rather than on objective findings such as x-rays or involuntary muscle spasms.

As indicated, the jury returned a verdict for the defendant. Plaintiffs make two contentions[3] in arguing that it should be set aside and a new trial ordered:

■ (1) That the jury finding of no injury to the male plaintiff was against the weight of the law and the evidence; and

(2) That the Court committed prejudicial error in allowing the defendant to introduce into evidence a "Hacker's License" application made by the plaintiff less than three months after the accident—more particularly, the negative answer of a physician, whose examination report was a required part of the application, to the question, "Is there any orthopedic abnormality (check muscle tone and range of movement) ?"[4]

■ For the following reasons, the Court finds neither of these contentions persuasive, and thus denies plaintiffs' motion for a new trial:

(1) To grant a new trial on the ground that the jury's verdict is against the weight of the evidence, the Court would have to find that it is clearly so, or that for some reason, or combination of reasons, justice would miscarry if it were allowed to stand. Eastern Air Lines v. Union Trust Co., 1956, 99 U.S.App.D.C.

---

ity verdict; this being done, ten jurors concurred in the result.

3. As originally submitted, plaintiffs' new trial motion was based on three grounds, but the first (that the form of the verdict: "for the defendant" was incorrect in view of the Court's instruction that liability on the part of the defendant was undisputed) was dropped on oral argument. Plaintiffs agreed that they had waived their right to complain of the verdict form—and it is seriously doubted that they have any—by their silence when it was submitted to the jury.

4. The application in question, required annually from those desiring permission to drive taxicabs in the District of Columbia, D.C.Code § 47–2331(e), was divided into two separate sides of a single page—the front, consisting of a varied group of 16 questions, to be filled out by the applicant himself, and the reverse side, consisting of some twenty questions calling for "yes-no" answers, to be completed by an examining physician.

664

205, 210, 239 F.2d 25; 6 Moore's Federal Practice 3818–19.

The Court cannot so find in this case. As detailed above, the Court's instruction for plaintiff on the liability feature of the case was limited to the statement that there was negligence. In accordance with undisputed tort principles, the jury was required to find that the male plaintiff had been *injured* by this negligence before it could return a verdict in his favor. And as further detailed, the evidence as to injuries was very much in conflict; and there was sufficient evidence for the jury to find that no injury had resulted proximately from this negligence: inter alia, (a) defendant Wade's testimony that immediately after the contact between the two vehicles, he had gone to the window next to which male plaintiff was sitting to ask for a pencil, and that male plaintiff had leaned forward—without complaint of pain or evidence of restricted movement—and obtained a pencil from the glove compartment; (b) plaintiff Wade's failure at the scene of the accident to complain to the defendant of any injury, either directly during the pencil incident, the occurrence of which was disputed by plaintiffs, or indirectly through the ambulance driver, who indisputably spoke to defendant; and (c) the report of Dr. Furnell,[5] which cast grave doubts on whether plaintiff had suffered any injury.[5a]

That plaintiff went immediately after the accident to the Emergency Room of the D. C. General Hospital to complain of an alleged injury, or that some doctors and laymen testified that he suffered injury was, of course, evidence in his favor; but it did not so strongly outweigh the conflicting evidence that the Court felt the jury verdict to be a manifest injustice. Especially in a case such as this where the essential judgment to be made was one of credibility, a Court should be slow to substitute its judgment for that of a jury. See Moore, supra.

(2) To grant a new trial because of the admission into evidence of the "Hacker's Application," the Court would have to find that such admission was erroneous and prejudicial. The Court now believes it was neither.

Defendants contend that the application was admissible on any or all of three grounds:

(a) That it was a record made in the regular course of business; 28 U.S.C. § 1732;

(b) That it was a record of a department or agency of the United States; 28 U.S.C. § 1733; and

(c) That it constituted an admission by plaintiff inconsistent with a position he was taking on trial.

Without deciding whether admissibility can be sustained on either of the first two grounds advanced, the Court holds the third ground furnishes ample basis for its ruling.

Plaintiffs' opposition to the introduction of this document is based on their contention that it contains a medical conclusion: that less than three months after the accident, male plaintiff had no "orthopedic abnormality," and that by introduction of the conclusion, alone, they were deprived of their opportunity to cross-examine the doctor to discover its basis. They claim that the policy of the courts of this Circuit against the admission of reports containing medical conclusions is so strong that their receipt should not be sustainable under any rule of admissibility. Finally, they contend that this medical conclusion was only technically an admission, because plaintiff had nothing to do with preparing the medical half of the application;[6] because the examination was a cursory one; and because it was directed only to discovering whether he was fit to drive a taxi.

---

5. Defendant's exhibit 4.

5a. This is in addition, of course, to the testimony by the defendant and his two passengers which indicated that the contact between the two vehicles had been slight.

6. See note 4, supra.

The Court cannot agree with these contentions. First, there is no doubt that the position taken by Mr. Wade in applying for a hacker's license less than three months after the incident here in question, and the answer of the doctor contained in the application, were inconsistent with contentions he was advancing on trial that because of the back injuries claimed, he was unable to drive his cab for approximately eight months after the accident.[7] Second, it is not the holding in this Circuit that admissions by a party are to be excluded merely because they contain medical conclusions; and it is recognized by this Circuit, in accord with general practice and authority,[8] that such admissions may be made through another acting on the party's behalf. These two principles are settled by the very case which is cited for the supposed general exclusionary rule, New York Life Insurance Co. v. Taylor, 1945, 79 U.S.App.D.C. 66, 147 F.2d 297. There the Court recognized the rule governing a situation quite analogous to the present one—the statements of a physician submitted as part of the proofs of loss filed by a beneficiary under an insurance policy—with these words:

"Its admissibility is based on the fact that the beneficiary whose duty it is to furnish the proofs of death must be presumed to have authorized the statements made in those proofs. If later at the trial she takes a position inconsistent with the proofs of death which she has submitted those statements are admissible as her representations." 79 U.S.App.D.C. at page 68, 147 F.2d at page 299.

Once authorization to another to make a representation on one's behalf is shown, the adoptive quality of the admission made by that representative can be defeated only if it is shown that the statements made by the representative were inconsistent with other acts of the principal *at that time*. Here the doctor's statement was completely consistent with the general position Mr. Wade was taking by his very act of making application for the license: that he was fit to drive a cab.

If, as plaintiff contends, the examination made by the doctor was cursory and the finding was not completely inconsistent with the presence of back injuries disabling for other than cab-driving, it was for counsel to make these arguments to the jury—and the Court so informed him when the application was received. But in view of the fact that one of the contentions plaintiffs advanced on trial was that Mr. Wade was unable to drive his cab for about eight months after the accident, they cannot possibly claim that this application does not vitiate that position; nor can they claim that Mr. Wade's act of application was not a voluntary one.

For these reasons, the Court believes that the admission into evidence of the application was not error.[9]

An order reflecting this opinion has been filed herewith.

---

7. "Q. [by plaintiffs' counsel]: And did there come a time or how long a period of time after this accident was it that you became unable to drive your taxicab? A. [by Mr. Wade]: I would say about from February to October roughly.
    "Q. When you went back were you able to drive it as much as you did before? A. No."

8. See generally, 4 Wigmore § 1073 (3rd Ed.1940).

9. In any event, the Court is satisfied that in view of the previous receipt into evidence of Dr. Furnell's report, and the subsequent testimony of Dr. Becker that he believed plaintiff to be malingering, the receipt of this application—even if it were error—would not have been sufficient "prejudicial error" to warrant grant of a new trial. 6 Moore's Federal Practice 3777.