PENN FRUIT COMPANY, INC. t/a Big
Valu Store *v.* CLARK

[No. 91, September Term, 1969.]

*Decided December 10, 1969.*

136

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, and SMITH, JJ. and W. HARVEY BEARD-MORE, Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Robert H. Bouse, Jr.* and *John F. King,* with whom were *Anderson, Coe & King* on the brief, for appellant.

*John F. Foley, Jr.,* with whom were *George W. White, Jr.* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellee.

BEARDMORE, J., delivered the opinion of the Court.

Precluded from adducing evidence which, it alleges, would show a lack of permanent injury, Penn Fruit Company, Inc. (Penn) appeals from a $9,000 judgment entered on a jury verdict in favor of Mrs. Ruth L. Clark for her personal injuries when she slipped and fell in the appellant's store on October 29, 1965.

Upon entering Penn's store in the Mondawmin Shopping Center, Mrs. Clark went directly to the meat counter where she picked out two packages of scrapple. She then turned from the counter, took approximately two or three steps in the direction of the check-out register, when her right foot slipped out from under her and she fell, landing on her buttocks and right side. She received medical treatment from Dr. Percival C. Smith for nine months following the incident. Dr. Smith, a general practitioner whose practice was limited to internal medicine, testified that he diagnosed her condition as a sprain of the cervical and lumbosacral vertebrae, and contusions of the right thigh and left ankle. He treated Mrs. Clark with diathermy on twenty-four occasions. He stated that Mrs. Clark had a history of poliomyelitis when she was a child as a result of which her right leg was one inch shorter than her left. As a corrective she wore special shoes. Lastly, it was Dr. Smith's opinion that Mrs. Clark would have a permanent partial disability of the spine due to her injuries.

Dr. Edward F. Wenzlaff, a diplomate of the National Board of Medical Examiners and the American Board of Orthopedic Surgery, testified on behalf of Penn. He related, without objection, the past history as taken from Mrs. Clark during his examination. This included the reference to polio, the manner in which she sustained her current injuries, and her complaints concerning such in-

juries. He then testified as to his physical examination and the results of his x-rays. His diagnosis was: "Status-post poliomyelitis involving the right lower extremity with a drop foot and rather marked, long-standing hypertrophic changes involving primarily the lumbar spine but also involving the cervical and thoracic regions but to a lesser extent."

Dr. Wenzlaff explained that the hypertrophic changes were "excessive bone growths usually about joints and they occur to all people in varying degrees with advancing age. They may or may not be symptomatic." He further stated that they are "usually associated in advancing age with morning stiffness, perhaps some aching with bad weather, stiffness which appears to resolve itself with increasing activity." Such hypertrophic changes normally take "years" to form ("over an extensive period of time"), according to Dr. Wenzlaff.

At this point counsel for Penn attempted to elicit testimony concerning the lack of permanency of any injuries suffered by Mrs. Clark as a result of the fall. A recounting of part of the transcript of testimony demonstrates this effort:

"Q. Doctor, do you have an opinion based on your examination of Mrs. Clark and based—

(The Court) I cannot hear you.

Q. —based on your examination of Mrs. Clark and based on reasonable medical certainty as to whether Mrs. Clark suffered any permanent disability to her back as a result of her fall of October 29, 1965?

(Mr. Foley) Objection.

(The Court) I will sustain the objection.

Q. Doctor, can you state in competent, medical terms and based on reasonable medical certainty whether Mrs. Clark suffered any permanent injury to her back as a result of a fall on October 29, 1965?

(Mr. Foley) Objection.

(The Court) I will have to sustain it. You have to put a hypothetical question to the Doctor.

Q. Doctor, assuming that Mrs. Clark fell on October 29, 1965, landing on her buttock and on her right side and suffering a, I believe it was diagnosed as a sprain to that portion of her back, an injury, and the symptoms being pain in the upper and the lower back region and assuming that as a result of that fall, she received treatment, do you have an opinion as to whether or not she suffered permanent disability?

(Mr. Foley) Objection.

(The Court) Sustained.

(Mr. Bouse) May we appoach the Bench, Your Honor?

(The Court) Yes.

(Bench Conference)

Q. Doctor, assuming that Mrs. Clark has worked for a period of thirty years without any indication of any problems to her back and that she was employed as, all that time, as a domestic and as a practical nurse and which did involve lifting in her work and assuming that she testified that prior to October 29, 1965, never had any problems with her back, that her general health was very good, and assuming that she did in fact fall on October 29, 1965, and landed on her buttock and her right side and as a result thereof suffered a sprain of the back, now based on all of this, all these facts, do you have an opinion as to whether or not Mrs. Clark suffered any permanent disability to her back?

(Mr. Foley) Objection.

(The Court) Sustained.

Q. I will give it one more try, Doctor. Assuming that, again, that Mrs. Clark worked for thirty years without any difficulty to her back, her work including lifting and a domestic and

a practical nurse, and she didn't have any complaints about her back for that period of thirty years, classified her health as very good, and that on October 29, 1965, she fell, landing on her buttock and right side and that as a result thereof she had complaints of pains in her back, of her shoulders, thighs, radiating down her arms, assuming that it was diagnosed to be a sprain, do you have an opinion based upon your examination of Mrs. Clark on December 27, 1967, taking into consideration all the aforegoing facts as to whether or not she suffered any permanent disability to her back?

(Mr. Foley) Objection.

(The Court) I will sustain the objection."

No proffer was made as to what the testimony of Dr. Wenzlaff would have been regarding such permanency, nor was there other evidence produced in the case regarding lack of permanent injury. It is apparent from the lower court's rulings that the objections to the questions were sustained in the belief that an examining doctor may not express an opinion unless it is in response to a hypothetical question. As stated in *Riddle v. Dickens,* 241 Md. 579, 581 (1966) :

"In order to establish a diagnosis or prognosis an examining doctor may rely on statements, pathologically germane, given to him by the patient, but if he is to testify as to a *causal relationship* he must do so in response to a hypothetical question."

In *Parker v. State,* 189 Md. 244 (1947), the case history of the plaintiff as related to the treating doctor was considered admissible, while the case history as related to an examining physician, was not. The distinction was predicated upon the status of the one being examined as patient vis-à-vis litigant. As a patient, he is apt to describe his pains and sufferings in a truthful manner. As

a litigant, somewhat different considerations may enter and the probability of truthfulness is lessened.

In this case, however, not only the past history of Mrs. Clark, but also her complaints regarding the injuries suffered as a result of the fall, came in *without objection*. In *Waxter v. Mindel*, 200 Md. 367, 379 (1952), it was stated:

> "The appellee claims that this testimony was merely hearsay and therefore not admissible. However, no objection was offered to this testimony. As this testimony, though hearsay, was admitted without objection, it is in the case for all purposes, and the Court must give it the same effect as if it had in fact been admissible legally."

See also: *Old v. Cooney Detective Agency*, 215 Md. 517 (1958), and *Gordy v. Ocean Park, Inc.*, 218 Md. 52 (1958).

In *Raleigh Manufacturers, Inc. v. Cantela*, just decided by this Court, 255 Md. 508 (1969), Judge McWilliams quoted at length from *Langenfelder v. Thompson*, 179 Md. 507-08 (1941). The quotation is equally apropos here:

> "A further objection of the appellants was that the questions, which were asked Dr. Wallace, did not contain any hypothesis. The appellants, cited *Quimby v. Greenhawk*, 166 Md. 335, 171 A. 59, where the court said that the admissibility of a hypothetical question depends primarily upon whether it furnishes the means of knowing upon what premises the conclusion is based. They also relied on *Mathiesen Alkali Works v. Redden*, 177 Md. 560, 10 A. 2d 699, which held that a hypothetical question must contain every material fact in evidence essential to the formulation of a rational opinion. But in those cases the questions were purely hypo-

142

thetical. In this case the opinion of the expert was formed from his personal observation. We follow the general rule that when a witness is called to express an opinion based upon personal observation, it is unnecessary to submit to him a hypothetical question before he can express his opinion. *Where a medical expert is familiar with the facts of an accident and the nature of the injuries, he is competent to testify whether the injuries were caused by the accident, without the necessity of having the facts in evidence recounted to him before he gives his opinion. It would be an idle and useless ceremony to require the evidence to be detailed in the form of a hypothetical question where the main facts are undisputed and the expert is entirely familiar with the facts.* Furthermore, any details which the expert has personally observed can be elicited either on direct examination or on cross-examination, and these details can be associated with the other grounds for the general conclusion; and if it is discovered that any essential facts have been overlooked, the weight of his opinion will thereby be weakened or entirely destroyed. The opinion of an expert, the grounds upon which it has been formed, and the weight to be accorded to it are all matters for the consideration of the jury." (Emphasis added.)

Under the circumstances the recitation of the past history and the current complaints indicated the examining physician's familiarity with the facts upon which to base an opinion as to the existence or non-existence of any permanent injury. Therefore, there was no need to propound a hypothetical question to him and the requirement to do so was in error.

It is apparent that the basic intent of the several questions propounded was to elicit the existence *vel non* of

permanent injury. It would have been better for counsel to have made a proffer so that the record would disclose what the examining physician would have testified to had such evidence been admitted. However, as stated in *Peregoy v. Western Md. R.R. Co.*, 202 Md. 203, 209 (1953):

> "There is authority in this State for the proposition that while ordinarily a proffer is desirable and sometimes indispensable to indicate the significance of the question and of the court's action in sustaining the objection, nevertheless, where the tenor of the questions and the replies they were designed to elicit is clear, a proffer in the record is not a necessary prerequisite for a review of the ruling."

The least that can be said about the questions in the instant case is that they were designed to ascertain whether or not a permanency existed. The treating physician did not indicate the extent, or percentage, of the permanency. From the purport of the questions it can therefore be assumed that the examining physician was prepared to testify as to the lack of any permanency.

There remains the question of whether or not the error was prejudicial in nature so as to require a reversal of judgment and a new trial. That the effect of an injury is permanent and therefore proper to be considered as an element of damages, has been upheld by a number of Maryland cases beginning with *Bannon v. B. & O. R.R. Co.*, 24 Md. 108 (1866). See, for example, *Straughan v. Tsouvalos*, 246 Md. 242 (1967). If testimony concerning the existence of permanency is proper, then it follows that the defendant is entitled to have the trier of fact consider evidence concerning the lack of permanency. In *Shivers v. Carnaggio*, 223 Md. 585 (1960), the injured party appealed, claiming that her doctors were restricted from giving their opinions as to her disability. This Court agreed and Judge Hall Hammond (now Chief Judge) stated on page 591:

"In the case before us, we find the discretion of the trial court not to have been soundly exercised and the appellant's presentation of her case to have been improperly hampered. The orthopedic specialist was not allowed to express an opinion even as to the extent of anatomical disability. The opinion of the general practitioner that there had been a twenty per cent loss of use of the lower back was stricken and the jury told to disregard it. This opinion apparently was intended to be as to loss of physical function, which the appellees concede is proper. Neither doctor was allowed to express an opinion, in percentage or otherwise, as to the effect of appellant's physical impairment on her or her future activities. In this we think there was error requiring reversal."

Here, too, the error was prejudicial. The failure to permit Dr. Wenzlaff to express his opinion improperly restricted the presentation of Penn's case on the issue of damages. Accordingly, the judgment should be reversed and the case remanded for a new trial.

*Judgment reversed, case remanded for a new trial.*
*Costs to be paid by appellee.*