CEILEA HODGE ET VIR v. ELLIS GEORGE DULEY, JR.

[No. 789, September Term, 1973.]

*Decided August 9, 1974.*

The cause was argued before GILBERT, MENCHINE and MOORE, JJ.

*Frank B. Haskell, III,* with whom were *Mitchell, Clagett & Haskell* on the brief, for appellants.

*John A. Buchanan,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Alleging error committed by the trial court, a husband and wife appeal from a judgment entered on a jury verdict for the wife in the amount of $525 for negligent injury when her car was struck in the rear by a vehicle operated by the appellee.[1]

The principal issue presented is whether the presiding judge improperly permitted Dr. Bernard J. Walsh, a qualified cardiologist who examined the wife at the request of counsel for the appellee-defendant, to relate the wife's medical history and to testify without the use of a hypothetical question concerning his diagnosis of her condition and the absence of causation between her hypertensive heart disease and the accident.

Prior to the accident which occurred on October 19, 1971, the wife, 63 years of age, had been treated for high blood pressure and hypertension. Her physician, Dr. Robert W. Merkle, who had treated her for this condition, testified at the trial in September 1973 that she then had permanent angina pectoris and that the accident was the proximate cause of this condition. Dr. Walsh testified that he had examined the wife at his office on March 13, 1973. Over objection, he stated that she was not suffering from angina pectoris but that she had hypertensive heart disease and that there was no connection whatsoever between her condition and the motor vehicle accident in 1971.

Noting that the total medical and hospital bills were in the amount of $1,683, that the ad damnum exceeded $100,000 and that the jury's award of $525 was scarcely $75 more than the bill for her hospitalization immediately subsequent to the accident, appellants in their brief claim that Dr. Walsh's testimony, erroneously admitted, was the "proximate cause of the low verdict."

---

1. A cause of action for injury to the marital relationship under Deems v. Western Maryland Rwy. Co., 247 Md. 95, 231 A. 2d 514 (1967) resulted in a directed verdict for appellee. Appellants in their brief state that the claim of error in directing a verdict under this count will be abandoned if no reversal and remand for a new trial is granted on the basis of alleged error in the admission of testimony of appellee's medical expert, Dr. Walsh.

The Court of Appeals of Maryland has consistently and repeatedly recognized the principle that a non-treating or examining physician may not relate patient history. *Parker v. State,* 189 Md. 244, 55 A. 2d 784 (1947); *Adams v. Benson,* 208 Md. 261, 117 A. 2d 881 (1955); *Wilhelm v. State Traffic Commission,* 230 Md. 91, 185 A. 2d 715 (1962); *Penn Fruit Company, Inc. v. Clark,* 256 Md. 135, 259 A. 2d 512 (1969).

The rationale of the rule was expressed in *Parker, supra,* wherein the Court pointed out that there is a strong inducement to speak the truth when a patient is attended for treatment but that it may be otherwise when the patient is examined for the purpose of creating evidence in his own behalf.

Unlike the present case, almost all of the cases in which the Court of Appeals has applied the rule have involved testimony by the patient's own physician. *Penn Fruit, supra,* did involve the testimony of a physician who examined the plaintiff on behalf of the defendant. *See also Francies v. Debaugh,* 194 Md. 448, 71 A. 2d 455 (1950), where, however, the physician was called by the plaintiff. But in *Penn Fruit* the testimony of the patient's history came in without objection; in *Francies* the Court found it unnecessary to pass on the objection and held that even if error had occurred, no prejudice was shown.

Here, at the outset of his direct examination, Dr. Walsh was interrogated concerning his éxamination of Mrs. Hodge, the appellant-wife, in March 1973 and an immediate objection was interposed to any statements which she made to him. The court in overruling the objection made the following observations:

> "THE COURT: Objection overruled if it is a history insofar as it is relevant to the question of diagnosis or treatment. It is admissible. As to how the accident happened and things like that it is not.
>
> "MR. HASKELL: It is not my understanding as to an examining physician, but I realize there are some points that are pathologically germane.
>
> "THE COURT: In addition to that if he is going

to testify to what was said it would be what the defendant said and that would be admissible. That is an exception to the hearsay rule too, so I think it is admissible on two different counts."

Thereupon Dr. Walsh testified that Mrs. Hodge informed him:

(a) That she had been aware of some high blood pressure for some years and had been hospitalized in Clinton, Maryland on several occasions because of it.

(b) That at the time of the accident she felt faint and believed that she lost consciousness for a few minutes but refused to enter an ambulance and was driven to the Clinton Community Hospital by her daughter. Her complaints then and for some days following consisted of aching pains about the back of her neck and over her left shoulder and of "fluttering" of her heart.

(c) For the last several months she had had no chest, arm or back pain nor any renewal of the "fluttering."

(d) Her complaints for several months prior to the examination had consisted largely of nervousness.

With respect to his clinical findings, Dr. Walsh testified that he found Mrs. Hodge "considerably overweight" at 169 pounds. Her blood pressure was elevated, being 170 over 110. Her heart rhythm rate and sounds were normal. An electrocardiogram presented, he testified, a pattern of left ventricular hypertrophy. He also testified that her electrocardiograms taken at Clinton Community Hospital in February 1970, December 1971 and April 1972 were compared by him with that taken in his office and that all four cardiograms were identical. The first two electrocardiograms were taken on the occasion of separate hospital admissions for some aspect of her hypertension.

On further direct examination of Dr. Walsh, the following ensued:

> "Q. Doctor, based on the history she gave you and your examination of her did you form a medical opinion as to any condition that she might have?
>
> "Mr. Haskell: I object, if the Court please. As I understand the law, Your Honor, and I have the case here, *it must be done with an examining physician only on the basis of a hypothetical question.* (Emphasis added.)
>
> "THE COURT: I do not understand it that way."

During a subsequent conference at the bench, this colloquy occurred:

> "MR. HASKELL: . . . You see, the theory of it is, the Penn Fruit case, if a patient comes in to a doctor for treatment they are going to give an accurate history and that is why a treating doctor can give a history with an exception to the hearsay rule. However, an examining doctor cannot give a history for that very reason, because of the influence of litigation.
>
> "THE COURT: I am sorry, but my feeling is so strong to the contrary and I have not read anything there that has changed that, *and I think he can base it on what she told him and his examination of her.* He did not ask with a reasonable degree of medical probability. . . ." (Emphasis added.)

Thereafter, over objection, the following question was asked:

> "Giving us your answer to a reasonable degree of medical probability, what diagnosis did you make, if any, as a result of the history Mrs. Hodge gave you and your examination of her? "

To which the doctor replied: "That she has hypertensive heart disease."

> "Q. What, if any, connection is there, doctor,

between that and the automobile accident of October 19, 1971?

"A None whatsoever.

"MR. HASKELL: I object, if the Court please.

"THE COURT: Objection overruled."

On cross examination Dr. Walsh testified that at the time of his examination Mrs. Hodge did not complain of chest pain and that he had elicited from her that she had not complained of chest pain for a long time theretofore. He said that she was not suffering from angina pectoris:

"A There is nothing in this lady's history to suggest for one minute she has had angina pectoris. I do not care what the cardiogram shows. If she does not have anginal pain —

"Q We just established a few minutes ago, doctor, those medical records are full of chest pain on Mrs. Hodge.

"A Not anginal pain.

"Q How do you know, doctor?

"A *I know very well from talking to her.*

"Q Do you know whether it was anginal pain from talking to her?

"A Beyond any question.

"Q Because did she tell you it was not anginal pain?

"A *No. By her description of her pain in response to my questioning.* That is the only way to make a diagnosis in anybody of angina pectoris, Mrs. Hodge or anybody else. That has nothing to do with the cardiogram." (Emphasis added.)

We hold that appellants' objections were not well taken. When a patient-litigant is examined by a physician for the adverse party, what he or she relates to him in the category of medical history adverse to his or her position in the case constitutes admissions — admissible as such. The rationale for their admission is well stated in Morgan, *Basic Problems*

*of Evidence* (1962), quoted in McCormick, *Law of Evidence* (2nd ed. 1972), § 262, p. 628:

> "The admissibility of an admission made by the party himself rests not upon any notion that the circumstances in which it was made furnish the trier means of evaluating it fairly, but upon the adversary theory of litigation. A party can hardly object that he had no opportunity to cross-examine himself or that he is unworthy of credence save when speaking under sanction of an oath."

Explicating 4 Wigmore, *Evidence*, § 1048 on the same subject, McCormick goes on to say, (p. 629):

> "Wigmore, after pointing out that the party's declaration has generally the probative value of any other person's assertion, says that it has in addition a special value when offered *against* him, in that he is discredited (like a witness impeached by contradictory statements) by his statements inconsistent with his present claim asserted in his pleadings and in the testimony on which he relies. And it passes the gauntlet of the hearsay rule, which requires that extra-judicial assertions be excluded if there was no opportunity for the opponent to cross-examine, because it is the opponent's own declaration and 'he does not need to cross-examine himself.' He then adds that 'the Hearsay Rule is satisfied' since the party 'now as opponent has the full opportunity to put himself on the stand and explain his former assertion.' "

Further on, McCormick points out that the justification of the admissibility of admissions — "the most satisfactory justification" — is that

> ". . . they are the product of the adversary system, sharing, though on a lower and nonconclusive level, the characteristics of admissions in pleadings or stipulations."

Finally, the treatise points out that admissions are really not hearsay:

> "This view has the added advantage of avoiding the need to find with respect to admissions the circumstantial guarantees of trustworthiness which traditionally characterize hearsay exceptions; admissions are simply classed as non-hearsay. Nevertheless, the usual practice is to regard admissions as an exception to the hearsay rule. . . ."

In *Walker v. West Coast Fast Freight, Inc.*, 233 F. 2d 939 (9th Cir. 1956), a personal injury action, a medical expert testifying in behalf of the defendant who had examined the plaintiff at the former's request recounted statements made in the course of the examination by the plaintiff concerning the origin of her injuries. On appeal the plaintiff alleged error in the admission of this testimony based on the rule that a physician consulted by a plaintiff for the purpose of qualifying him to testify may not in testifying repeat what the plaintiff told him as to how the accident occurred or as to past suffering or nervousness. Citing Wigmore, *supra*, § 1723, the U. S. Court of Appeals said:

> "However, Dr. Jones was *appellees'* medical expert who had examined appellant and the story he told was a statement used *against* her. A different situation is presented in such a case than where a personal-injury-plaintiff's doctor seeks to recount the plaintiff's self-serving hearsay. A statement as to how an injury occurred would not qualify under the 'statements of physical condition' exception to the hearsay rule in either case, but a plaintiff's statement to defendant's doctor would be properly admissible *against* the plaintiff under the 'admission of a party' hearsay exception." (Emphasis in original.)

Similarly in *Matthias v. Lehn & Fink Products Corp.*, 424 P. 2d 284 (Wash. 1967) the court rejected plaintiffs' argument

that an examining doctor on behalf of the defendant should not have been permitted to express an opinion, based on the history obtained from plaintiff, as to the cause of his loss of hair because he examined plaintiff merely for the purpose of qualifying as a witness. The court said:

> "Dr. Scott examined the plaintiff in behalf of the defendants. The rule contended for by the plaintiffs applies only where a doctor examines on behalf of a plaintiff and then testifies in behalf of that plaintiff; therefore plaintiffs' objection has no applicability in this case."

*See also Wade v. Lane*, 189 F. Supp. 661 (D.C.D.C. 1960); *Taylor v. Baltimore*, 344 F. 2d 281 (2d Cir. 1965); *Levermann v. Cartall*, 393 S.W.2d 931 (Tex. Civ. App. 1965); *Chavaries v. Nat'l Life & Accident Ins. Co.*, 110 S.W.2d 790 (Mo. App. 1937); *Wilkinson v. Grover*, 181 So. 2d 591 (Fla. App. 1965).

The lower court was also correct in declining to require that Dr. Walsh's diagnostic and causation testimony be given only in response to a hypothetical question. Here, the opinion of Dr. Walsh was based upon what Mrs. Hodge told him, upon his own clinical tests and findings and upon his examination of her present and past medical records received in evidence. As the Court of Appeals held in *Langenfelder v. Thompson*, 179 Md. 502, 20 A. 2d 491 (1941), we also hold that to require the evidence to be detailed in the form of a hypothetical question would be "an idle and useless ceremony." The following statement of Judge Delaplaine in *Langenfelder* (p. 507) is strikingly apposite here:

> "In this case the opinion of the expert was formed from his personal observation. We follow the general rule that when a witness is called to express an opinion based upon personal observation, it is unnecessary to submit to him a hypothetical question before he can express his opinion."

*See also Raleigh Manufacturers v. Cantela*, 255 Md. 508, 258 A. 2d 403 (1969) and *Penn Fruit Company, Inc. v. Clark*,

*supra,* where the above and additional observations of Judge Delaplaine pertaining to the necessity *vel non* of hypothetical questions under circumstances similar to those in the instant case are quoted with approval.

*Judgment affirmed; appellant to pay the costs.*