647 A.2d 137

Gerald L. CHADDERTON, Jr.

v.

M.A. BONGIVONNI, INC., et al.

No. 1877, Sept. Term, 1993.

Court of Special Appeals of Maryland.

Sept. 6, 1994.

474

Philip Sturman (Anne E. Hoke–Witherspoon and Ingerman & Horwitz, on the brief), Baltimore, for appellant.

Victor J. D'Avella, Bel Air, for appellees.

Argued before ALPERT, WENNER and CATHELL, JJ.

ALPERT, Judge.

We are called upon to decide whether medical reports, per se, are admissible in a Worker's Compensation appeal at a *de novo* trial in the circuit court. Appellant, Gerald L. Chadderton, Jr., appeals from a judgment entered after a jury trial in the Circuit Court for Harford County, on appellant's workers' compensation claim appeal against appellee, M.A. Bongiovanni, Inc., et al.[1] The jury found that he suffered an 85 percent

---

1. The following parties were defendants below: The Subsequent Injury Fund ("SIF"), M.A. Bongiovanni, Inc. (the Employer) and Liberty Mutual Insurance, Co. (the Insurer). On April 22, 1994, SIF filed a Line with this court that it would not take a position in this matter and would not participate in this appeal. Accordingly, the two parties on this appeal, the Employer and the Insurer, are collectively referred to as

permanent industrial disability with 55 percent due to a work-related accidental injury on November 7, 1985, 25 percent due to a pre-existing disability, and 5 percent due to an unrelated disability. On appeal, appellant asks us:

I.  Whether the trial court committed reversible error when it admitted into evidence medical evaluations over the objection of counsel and without requiring compliance with the Maryland Rules of Evidence?

II.  Whether the trial court erred in allowing the Subsequent Injury Fund to call a witness to testify, and to introduce evidence, not disclosed in discovery which had been propounded by a co-party?

III.  Whether the trial court abused its discretion in qualifying Jada Marie Beach as an expert witness and in allowing her to so testify?

We answer the first question in the affirmative and, therefore, reverse.

## Facts and Proceedings

On November 7, 1985, appellant was driving stakes into the ground with a sledgehammer when the top of the stake splintered and appellant hit his left foot with the sledgehammer. Appellant subsequently lost his balance and fell on his hip, injuring his back. On April 28, 1992, the Workers' Compensation Commission ("Commission") found that appellant was permanently totally disabled, with 50 percent of the disability due to the accidental injury on November 7, 1985, 40 percent due to pre-existing conditions,[2] and 10 percent due to a subsequent disability that was unrelated to the compensable injury. As a result of this decision, appellant received temporary total disability benefits for the period from November 11, 1985, through February 7, 1991. Because, *inter alia*, he was

---

appellee. According to appellee's brief, the correct spelling of the employer's name is M.A. Bongivanni, Inc.

**2.** Appellant testified that "in the early 70's" he was involved in an automobile accident which "slowed [him] down a little bit." Appellant was also involved in another automobile accident in 1981.

not awarded permanent total disability benefits, on May 15, 1992, appellant filed an appeal in the Circuit Court for Harford County and requested a jury trial. *See* Labor & Empl.Article, Md.Ann.Code § 9–745(d) (1991). The Subsequent Injury Fund filed a cross-appeal.

On October 5, 1993, appellant took the deposition of Dr. Jeffrey D. Gaber, M.D. This deposition and two reports allegedly referred to therein are at the crux of this appeal. During the deposition, Dr. Gaber, on his own volition, commented upon the rating prepared by Dr. Laurence Desi, Sr., M.D. (hereinafter the Desi report).[3] This six page "Disability Evaluation and Rating" dated November 27, 1990, was prepared by Dr. Desi and included the following sections: "History of Injury," "Subjective Complaints," "Medical History," "Personal and Social History," "Employment," "Examination," "Discussion," "Assessment," and "Summary." The report noted that, "[b]ased upon [appellant's] history of pre-existing disc derangement with residual symptoms, [the Doctor] estimate[d] a 15% impairment pre-existing the . . . injury; and a 36% impairment due to the 1985 injury" and summarized the Doctor's findings as follows:

|  | pre [1985] | due to | post [1985] |
|---|---|---|---|
| Malaria | 5% | 0% | 0% |
| Back | 15% | 36% | 0% |
| (R) Upper Ext. | 0% | 0% | 10% |
| (R) Hip | 0% | 5% | 0% |
| Heart | 0% | 0% | 5% |
| TOTAL | 19% | 39% | 14% |

The report concluded by noting that appellant "has a total overall impairment to the whole person of 58%." During

---

**3.** The record reveals that the first reference to the two Reports was made when Dr. Gaber responded that

[s]ince I saw [appellant], I was given additional records to look at, and I reexamined the patient and so forth. In November of 1990, he was seen by a Dr. Desi . . . at the employer's request. And at that time, he did an EKG showing a right bundle branch block.

In July '92, he was seen again by Dr. Rosenthal, the treating orthopedist who altered his medication due to increasing back pain.

cross-examination, counsel for appellee asked Dr. Gaber to comment on a medical evaluation by Dr. Mark S. Rosenthal dated February 23, 1990 (hereinafter the Rosenthal report). This report was in the form of a letter addressed to Ms. Judith Robinson of the Liberty Mutual Insurance Company. In pertinent part, the letter states

> Mr. Chadderton has a 40% permanent partial disability due to the injury and subsequent surgery on his lumbosacral spine. He also has a 7% permanent partial disability to the right upper extremity because of his brachial plexus palsy.

Appellant's counsel objected on the grounds of hearsay to the line of questioning and moved that the testimony be stricken.

A *de novo* jury trial was held on October 25 and 26, 1993, during which the deposition was introduced into evidence by appellant. During the trial, appellant raised the issue of his earlier objection to the line of questioning of Dr. Gaber and the two reports. The court overruled the objection in the record. At the opening of the defense's case, SIF moved to have the Desi report admitted into evidence. Appellee's counsel then moved to have the Rosenthal report admitted into evidence. Over strenuous objection by appellant, the trial court ruled that the two reports were admissible into evidence. Additionally, during the trial, an expert witness, Jada Marie Beach, testified with regard to her evaluation of appellant's work capacity. This appeal from the jury verdict and judgment followed.

## I.

Appellant contends that the circuit court erred in admitting the Desi and Rosenthal reports because they are inadmissible hearsay. Appellee asserts that this argument is not preserved for our review as appellant "waived any objection to the reports when he failed to challenge portions of the deposition as provided for by the Maryland Rules of Proce-

dure."[4] In the alternative, appellee also asserts that because Dr. Gaber referred to the two reports in his testimony, the reports are part of the record before the Commission and part of the record submitted to the circuit court.

An appeal from the Workers' Compensation Commission is essentially a *de novo* trial that may proceed before a judge or a jury. *See* Labor & Empl.Article, Md.Code Ann. § 9–745 (1991); *see also General Motors Corp. v. Bark,* 79 Md.App. 68, 78–79, 555 A.2d 542 (1989). Although the trial is considered to be de novo, "the decision of the Commission is presumed to be prima facie correct." § 9–745(b)(1).

In the case now before us, appellant objected to the introduction of the Rosenthal and Desi reports. Neither witness (*i.e.,* Dr. Rosenthal or Dr. Desi) testified before the Commission or before the circuit court. Appellant disputes that Dr. Rosenthal's report was part of the record. Appellant's counsel argued that these reports were not admissible at the *de novo* trial because there was no opportunity to cross-examine the hearsay declarants.

The Rosenthal report is written on Dr. Rosenthal's letterhead. It was addressed to Liberty Mutual Insurance Company, one of the parties in this case. This letter states the doctor's opinion that appellant "has a 40% permanent partial disability due to the injury and subsequent surgery on his lumbosacral spine. He also has a 7% permanent partial disability to the right upper extremity because of his brachial

---

4. Appellee made a similar assertion during the trial below. The trial court concluded that the court would "overlook any untimeliness factor and overrule the objections in the record." Md.Rule 2–416(g) (1994) states that "[e]vidence objected to shall be taken subject to the objection" and the "[o]bjections to all or part of the deposition shall be made in writing within sufficient time to allow for rulings on them." In this respect, appellant's failure to file a timely motion objecting to the introduction of parts of the deposition is inexcusable. The Rule, however, does grant the trial court latitude in deciding this issue as it states "[t]he court may permit further designation and objections as *justice may require." Id.* (emphasis added). This is a matter clearly within the court's discretion. The trial judge did not abuse that discretion.

plexus palsy." This letter contains the notation, "Dictated not read." The Desi report is written on Dr. Desi's letterhead. This report states that appellant has "a total overall impairment to the whole person of 58%." Additionally, the report states that 36% of appellant's disability was due to the 1985 injury. This report was signed by Dr. Desi.

Below, counsel for the SIF brought to the court's attention Labor & Empl., Md.Code Ann. § 9–745 (1991), which provides in part that "[t]he proceedings in an appeal shall be informal and summary." In response to appellees' argument that the hearsay reports by Dr. Rosenthal and Dr. Desi were admissible, the trial judge stated

> In all my years of presiding over workmen's comp trials, I am basically unaware of this provision now codified as section 9–745 of the labor article. No counsel, until yesterday, had ever suggested to me that [a workers' compensation case] could proceed other than under the normal rules of evidence and the normal formality for litigation in the Circuit Court.
>
> ❊     ❊     ❊     ❊     ❊     ❊
>
> If the words informal and summary are to mean anything, it seems to me that you can have a Circuit Court proceeding that proceeds in the same way, the same fashion that it did at the Commission level. At the Commission level the Commission is exempted from the common law rules of evidence. They receive hearsay. They receive written reports from doctors, which are hearsay. As far as I am aware, they are just laid on the desk of the Commissioner without any further authentication as business records or the like. Nor is there—most of the time the doctor is not there to verify his or her opinion.

In admitting the reports, the court noted that,

> So the question in this case is are these two reports sufficiently reliable type[s] of information that the jury can consider them? In all probability, if we had the doctor[s] here, [they] would probably qualify them as a business record. I am reasonably sure they were produced in the

ordinary course of business and kept as such by the doc-tor[s'] offices.

In all probability, if both of these doctors were produced in person, and took the stand, there certainly is a very strong likelihood that on direct examination they would testify in conformity with the written reports they have issued. So that gives some indication to me of their reliability.

The court then ruled that the reports were admissible because they showed sufficient indicia of reliability. The court cited four cases in support of its ruling: *Waddell George's Creek Coal Co. v. Chisholm*, 163 Md. 49, 161 A. 276 (1932); *Savage Manufacturing Co. v. Magne*, 154 Md. 46, 139 A. 570 (1927); *Standard Oil Co. v. Mealey*, 147 Md. 249, 127 A. 850 (1925); and *Yellow Cab Co. v. Bisasky*, 11 Md.App. 491, 275 A.2d 193 *cert. denied*, 262 Md. 745, 751 (1971).

At the outset, we note that while the cases cited by the trial court hold that certain reliable hearsay evidence may be admissible in workers' compensation cases, these decisions are inapposite to the case now before us. *See generally, Candella v. Subsequent Injury Fund*, 277 Md. 120, 125–26, 353 A.2d 263 (1976) (explaining that "[a]lthough most, if not all, of the cases approving the admissibility of hearsay in workmen's compensation cases appear to have involved the statement of a deceased employee describing a simple event, we continue to eschew the adoption of a binding rule, preferring to consider each case on its particular facts.") Moreover, it is now well settled that the worker's compensation appeal is conducted as a trial "essentially" *de novo* and we have held that "realistically" there is no difference between an essential trial *de novo* and a true trial *de novo*. *Bark*, 79 Md.App. at 79, 555 A.2d 542. The *de novo* circuit court trial may not always be an "instant replay" of the worker's compensation commission hearing. As the *Candella* court observed "[w]hile Code (1957, 1964 Repl.Vol.) Art. 101, § 11, provides that the commission is not to be 'bound by the usual common law or statutory rules of evidence,' such evidence may be subject to rejection in the

circuit court on a review *de novo.*" [5] *Candella*, 277 Md. at 124, 353 A.2d 263. Additionally, 100 C.J.S. *Workmen's Compensation* § 768(c) is instructive. It states, in part, that

[n]otwithstanding a statute provides that the court may exclude or admit evidence taken before the commission, the court, on appeal from the commission, must apply the rules of evidence in accordance with established principles of law, and may consider only evidence properly before it.

Accordingly, immaterial, irrelevant, and incompetent evidence, among which objectionable evidence is included such evidence as hearsay, is, ordinarily, inadmissible before the court, board, or commission. Moreover, the fact that the evidence was admitted by the lower tribunal does not, ordinarily, render admissible evidence which is inadmissible under the general rules, such as hearsay evidence, although it has also been held in some jurisdictions that hearsay evidence received by the commission must be admitted to the jury.

(footnotes omitted).

The reports at issue here contained medical opinions that were less favorable to appellant than the opinion of appellant's expert witness, Dr. Gaber. Appellee does not contest the fact that these reports were hearsay.[6] Accordingly, we are faced with the question of whether, in light of the trial court's view that because the proceedings before the Commission were

---

5. In 2B Larson, *Workmen's Compensation Law*, § 79.25(c), the author states that "[h]ospital or physician's records have been accepted, sometimes under the rubric of the business-records exception to the hearsay rule." (footnote omitted). The author further notes that "[r]eports, letters and depositions of doctors have elicited a difference of view [and that] [t]he majority accepts such evidence." These cases appear to be inapposite to the case before us because they either are statute-specific or address proceedings at the Commission level rather than at a *de novo* trial.

6. Appellee maintained that the reports "are unquestionably hearsay evidence and they may not necessarily fall within any specifically defined exception to the hearsay rule. Admittedly they were not part of any hospital records exception, yet they are admissible because they were reliable and trustworthy."

"informal and summary" the circuit court proceeding "proceeds in the same way," the court erred in ruling that these reports were admissible as evidence because the "two reports [possessed] sufficiently reliable type of information that the jury [ ] consider them [.]" We therefore examine the "reliability" aspect of these reports.

As we have found no Maryland case on point, we look to other authorities. In *Yates v. Bair Transport, Inc.*, 249 F.Supp. 681 (1965), the parties sought a pre-trial ruling regarding the admissibility of reports of several doctors who had examined the plaintiff regarding a Workmen's Compensation case. Three different reports were sought to be introduced: (1) two separate reports of doctors who examined the plaintiff on behalf of two insurance companies (the Guthrie report [7] and the Richman report respectively) and (2) the report of the plaintiff's treating physician (the Fleck report).[8]

In determining which of the reports were admissible, the court first divided them "based on the identity of the party on whose behalf the report was prepared." *Id.* at 689. The court explained that the Guthrie report was prepared "in the ordinary course of business of both doctors" using the standard set forth in *White v. Zutell*, 263 F.2d 613 (2d Cir.1959). *Id.* In *White*, a report made by a specialist was found to have been made as part of the specialist's business and was found to "bear[ ] its own inherent guaranty of being what it purport[ed] to be." *Yates*, 249 F.Supp. at 689 (citing *White*, 263 F.2d at 615). The *Yates* court analyzed the reports in light of *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943) [9] and concluded that because appellant asserted that all

---

7. Yates was examined by Doctors Guthrie and Youmans on behalf of Liberty Mutual Insurance Company and their reports are collectively referred to as the Guthrie report.

8. Doctors Fleck and Lewis were Yates's treating physicians and their reports are collectively referred to as the Fleck report.

9. *Palmer* addressed the likely untrustworthiness of materials prepared in anticipation of litigation. In that case, the Supreme Court held that

the doctors' reports were prepared for litigation, the reports must demonstrate "an added element of trustworthiness which will counterbalance the fact that these reports were prepared in clear anticipation of litigation." *Yates*, 249 F.Supp. at 689–90. The court then opined that a doctor's report, prepared in the regular course of business, is admissible "when offered by one other than the entrant or one for whom the entrant is then working." *Id.* at 690 (quoting *Rotondi v. McLellan*, 194 F.Supp. 415, 417 (E.D.N.Y.1961)).[10] Accordingly, the court concluded that the Guthrie report was admissible because it was generated at the behest of one of the insurance companies and the appellant sought to introduce it. *Id.* at 690. The court noted that the Fleck report was not admissible because it was "self-serving with no added degree of trustworthiness," *id.* at 691, and that "where, as here, there is no counterbalancing force to the desire to promote the self-interest of the party on whose behalf the report was made, discretion dictates that the objection [to the introduction of the report] be sustained and the [appellant] be required *to call* [the doctors.]" *Id.* at 692 (emphasis added). In other words, the court concluded that "self-serving" reports without any "counterbalancing force" were not admissible and that the doctors had to testify in court.[11] *See also* 100 C.J.S. Worker's Compensation § 768(c), *supra.*

---

a deceased engineer's written report to a railroad officer was not admissible. The Court emphasized the fact that the report was not

typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls. The conduct of a business commonly entails the payment of tort claims incurred by the negligence of its employees. But the fact that a company makes a business out of recording its employees' version of their accidents does not put those statements in the class of records made "in the regular course" of business.

*Id.*, 318 U.S. at 113, 63 S.Ct. at 480.

**10.** We made a similar decision in *Hodge v. Duley*, 22 Md.App. 392, 323 A.2d 607, *cert. denied*, 272 Md. 743 (1974). *See also* MR 5–803(a)(1).

**11.** In *Pratt v. State*, 39 Md.App. 442, 456, 387 A.2d 779 (1978), *aff'd*, 284 Md. 516, 398 A.2d 421 (1979), we stated that

The rationale behind the trustworthiness requirement of a hearsay exception was explained by the Court of Appeals in *Candella*, 277 Md. at 123–24, 353 A.2d 263, in the following manner:

[A]n attending physician may testify as to the medical history related to him by his patient, and may also state his conclusions reached on the strength of that history. The same proposition has been applied ... in workmen's compensation cases[.] Such testimony is admitted under an exception to the hearsay rule, the underlying rationale being that the patient's statements to his doctor are apt to be sincere when made with an awareness that the quality and success of the treatment may largely depend on the accuracy of the information provided the physician.

In Maryland, however, we have not extended this principle to include the case in which the patient's history has been related to a nontreating physician, ...; in these instances, the trustworthiness which characterizes the declaration is no longer assured, since the patient is aware that the statements are being received primarily to enable the physician to prepare testimony on his behalf rather than for purposes of diagnosis and treatment.

(citations omitted). The Court went on to hold that, in that case, the opinion of the non-treating psychiatrist was not admissible because it was based solely on the statements of the appellant/patient and lacked the requisite "indicia of reliability." *Id.* at 126, 353 A.2d 263.

The rule concerning admissibility of a non-treating physician's testimony, as explicated in *Candella*, was substantially modified in *Beahm v. Shortall*, 279 Md. 321, 326–27, 368 A.2d 1005 (1977). In that case, the Court held that

---

[a] number of authorities feel that if the report is prepared for a purpose other than treatment this indicia of reliability disappears, especially if the report is prepared in anticipation of litigation. Consequently, these authorities have held the trial court possesses discretionary power to exclude reports which appear to be unreliable even though they satisfy the letter of the business record exception.

(footnote omitted) (citing, *inter alia, Yates,* 249 F.Supp. at 690.)

a physician, who examines a patient, not for the purpose of treatment, but in order to qualify as an expert witness, may present his medical conclusions and the information, including the history and subjective symptoms, received from the patient which *provide the basis for the conclusions.* The conclusions are admissible as substantive evidence. The statements made by the patient, as narrated by the physician, are admissible, with a qualifying charge to the jury, only as an explanation of the basis of the physician's conclusions and not as proof of the truth of those statements.

*Id.* at 327, 368 A.2d 1005 (footnote omitted). Thus, a nontreating physician's conclusions are admissible as "substantive evidence" and any "narrations" relating to statements made by the patient to the doctor are admissible only as an explanation of the doctor's conclusion, with a qualifying charge to the jury, but not for their truth.

■ We also note that "a hospital record is admissible under the business records exception to the hearsay rule," *Fuget v. State,* 70 Md.App. 643, 653, 522 A.2d 1371 (1987), as long as the information is "pathologically germane." Joseph F. Murphy, Jr. *Maryland Evidence Handbook,* § 804(C) (2nd ed. 1993). *See* Cts. & Jud.Proc, Md.Code Ann. § 10–101 (1989) (explaining what is admissible as business records.) *See also Newell v. Richards,* 83 Md.App. 371, 388, 574 A.2d 370 (1990), *rev'd on other grounds,* 323 Md. 717, 594 A.2d 1152 (1991) (where a doctor's office record was admitted as a business record to establish the receipt of a telephone call).

■ One of the reasons the two reports were admitted into evidence was that the trial court concluded that had the two doctors been present in court (*i.e.,* Dr. Rosenthal and Dr. Desi), the reports would have qualified under the business records exception to the hearsay rule. We recognize, of course, that had the two doctors been present in court, the appellant would have had the opportunity to cross-examine them and perhaps, this appeal would not have been taken. The trial court went a step further. Despite the fact that the

reports had not been qualified as business records,[12] and that the appellant "ha[d] no opportunity to cross-examine the doctor," the court decided that it would "follow at least in some measure the type of procedure that the Commission followed in having the evidence submitted to the jury." In other words, the able and experienced trial judge recognized that the submission of the two reports could be detrimental to the appellant but apparently, after thoughtful analysis, felt constrained by the statutory provision allowing the proceedings to be "informal and summary." We conclude that given these circumstances, appellant was prejudiced because there was no opportunity to cross-examine Dr. Desi and Dr. Rosenthal regarding the medical opinions contained in their reports. Where hearsay evidence is erroneously admitted and prejudice is shown, reversal is required. *Beahm*, 279 Md. at 331, 368 A.2d 1005. Thus, we hold that the circuit court committed reversible error in admitting both of these reports in their entirety, over appellant's objection.

As we have previously noted, in *Candella*, 277 Md. at 125, 353 A.2d 263, the Court of Appeals explained that while the "[C]ommission is not to 'be bound by the usual common law or statutory rules of evidence,' such evidence may be subject to rejection in the circuit court on a review *de novo*" (quoting Code (1957, 1964 Repl.Vol.) Art. 101, § 11). *See also General Motors Corp. v. Bark*, 79 Md.App. 68, 78–79, 555 A.2d 542 (1989). We do not intend by this holding to exclude reports or

---

**12.** We do not decide whether medical reports of the nature of those at issue here would even qualify as "business records." That question is left for another day. We recognize that in *Marlow v. Cerino*, 19 Md.App. 619, 637, 313 A.2d 505, *cert. denied*, 271 Md. 739 (1974), Chief Judge Gilbert wrote:

> The majority view is that opinions in a hospital report are admissible in evidence, and it is incumbent upon the person seeking to attack those opinions to call the declarant as a witness and examine him for weakness or error.

*See also In re Colin R.*, 63 Md.App. 684, 692–93, 493 A.2d 1083 (1985). This procedural policy thus far has been limited to hospital records and whether it should be extended to instances where a party seeks to introduce into evidence a physician's report is also a matter that we need not address today.

portions thereof relied upon by a testifying expert in rendering his/her opinion. It is obvious that they would be deemed trustworthy by the expert who had relied upon them.

## II.

Appellant next contends that the court erred by allowing the introduction of Dr. Rosenthal's February 23, 1990, medical report because it was not produced during discovery and because it was not part of the record before the Commission. As we have concluded that this report was inadmissible hearsay, we need not address this issue.

Additionally, appellant contends that Ms. Beach should not have been permitted to testify because she was not disclosed during discovery as a witness. After the voir dire of Ms. Beach, appellant's counsel stated, "If she is only being offered to describe what she technically had Mr. Chadderton perform and what the results were, I don't have any objections to her testifying essentially as a fact witness. But I have a strong objection to her being offered as an expert. . . ." Thus, the court was not informed that appellant objected to Ms. Beach's testimony based on any discovery violation but rather that appellant objected to any expert opinion testimony by Ms. Beach. We conclude that an objection based on an alleged discovery violation was waived.

## III.

Appellant contends that the court erred in permitting Ms. Beach to testify as an expert because she was unqualified to express an expert opinion on appellant's ability to perform physical labor. We disagree.

During the voir dire of Ms. Beach, she testified that she had received a degree in physical education with a minor in athletic training from Towson State University in 1990. Her work experience included employment as an exercise physiologist in the field of exercise rehabilitation and as a "corporate wellness director," a position that required her to develop exercise programs for employees. She stated that she was

employed as a "work hardening coordinator" with Health-south, a provider of rehabilitative health care. According to Ms. Beach, "A work hardening program and progress rehabilitation program is designed to increase one's physical function through cardiovascular fitness, strength training, [and] flexibility...." As part of her employment she conducts "work capacity assessments" in which she tests an individual's physical ability, to determine whether he is able to perform certain work or whether rehabilitation is necessary.

Over appellant's counsel's objection, the court accepted Ms. Beach as an expert in the field of "work hardening and work capacity." Ms. Beach testified that on September 13, 1993, appellant was referred to her for a work capacity assessment. Ms. Beach testified with regard to her personal observations of appellant during the test. Based on the test, she recommended that appellant was "capable of returning to a job with limited sitting, limited lifting, walking twelve minutes, which basically puts him into the sedentary to light category."

■ Generally, designation of a witness as an expert is a subject of broad judicial discretion. *State v. Bricker*, 321 Md. 86, 95, 581 A.2d 9 (1990). "[A] person must demonstrate a minimal amount of competence or 'expertise' on the subject on which he is allegedly an expert in order to be qualified to testify as an expert witness." *Beahm*, 279 Md. at 339, 368 A.2d 1005. Based on the voir dire of Ms. Beach, the court could properly find that she was qualified through her training and work experience to testify as an expert in the area of "work hardening and work capacity."

■ Additionally, with respect to Ms. Beach's testimony, the court instructed the jury as follows:

A witness who has special training or experience in a given field is permitted to express opinions based on observed or assumed facts to aid you in deciding the issues of the case. In weighing the opinion of an expert you should consider the expert's experience, training and skills, as well as the expert's knowledge of the subject matter about which an expert is expressing an opinion.

> You should give the expert—you should give the testimony the weight and value you believe it should have. You are not required to accept any expert's opinion. You should consider an expert's opinion together with all other evidence.

We conclude that the court properly instructed the jury that Ms. Beach's qualifications could be considered in determining the weight that her testimony should receive. We further conclude that the court did not abuse its discretion in permitting Ms. Beach to testify as an expert witness in this case. Finally, we conclude that the court properly allowed Ms. Beach to refer to a physical therapist's report upon which she based her opinions and final conclusions with respect to appellant's work assessment test results. This was because an expert witness may base her opinion on opinions rendered by third parties, *Hill v. Baltimore County,* 86 Md.App. 642, 657–59, 587 A.2d 1155 (1991), and may rely on hearsay information learned before trial, if it is of a type reasonably relied upon by experts in that field. *See Consol. Mechanical Contractors, Inc. v. Ball,* 263 Md. 328, 335–39, 283 A.2d 154 (1971); *State Roads Comm'n v. Creswell,* 235 Md. 220, 227, 201 A.2d 328 (1964) ("It is not a ground for excluding the testimony of an expert that he bases his statements in whole or in part upon what he has read, provided that his reading can be assumed to constitute part of his general knowledge adequate to enable him to form a reasonable opinion of his own."). *See* Lynn McLain, 6 *Maryland Evidence,* § 703.1 at 237–29, nn. 6–10. In the instant case, Ms. Beach specifically replied that the physical therapist's report was of "the type of information [used] in making [her] assessment." Accordingly, there was no error.

JUDGMENT REVERSED; CASE REMANDED FOR A NEW TRIAL; APPELLEE TO PAY THE COSTS.