# CREWS *v.* DIRECTOR OF PATUXENT INSTITUTION

[App. No. 137, September Term, 1964.]

*Decided January 11, 1967.*

Before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

BARNES, J., delivered the opinion of the Court.

The applicant, Isaac Lee Crews, was convicted in 1963 of obtaining money by false pretenses and sentenced to serve six years in the House of Correction. (This sentence was later reduced to two years). Mr. Crews was transferred in October, 1963, to Patuxent Institution for diagnostic evaluation. The report of Patuxent, filed February 19, 1964, recommended Mr. Crews' commitment as a defective delinquent. On January 6, 1965, a jury found Mr. Crews to be a defective delinquent. Mr. Crews filed an application for leave to appeal and a petition to proceed *in forma pauperis* on January 20, 1965. He requested that counsel be appointed to assist him in the prosecution of that application.

Almost two years have elapsed since the filing of the application in a futile effort by the courts to appoint counsel acceptable to the applicant.[1] We have been very liberal in post-

---

1. Mr. Howard L. Muhl, Jr., who represented Mr. Crews at the defective delinquency trial was initially appointed to assist him in prosecuting the application for leave to appeal. Mr. Crews appeared to be dissatisfied with Mr. Muhl and requested this Court, by letter of March 9, 1965, "to appoint an attorney other than Mr. Muhl to represent me on the appeal (No. 137) now pending in this Court." By letter of May 18, 1965, Mr. Crews reiterated his disenchantment with Mr. Muhl and prayed "that he be removed from this case, or disqualified." On September 4, 1965, Mr. Crews wrote this Court asking "that my case not be heard until I can get an atty. other than Mr. Muhl to represent me."

It appears that Mr. E. Edward Toscani, a Harford County attorney, was subsequently appointed to assist Mr. Crews in present-

poning a determination of this application. But, for the proper administration of justice, we can postpone decision no longer. Mr. Crews has had ample opportunity to have counsel assist him in the prosecution of his application for leave to appeal. He has refused such assistance. We hold that he has waived whatever right of counsel may be given him by Code, Article 31B, sec. 11A, and proceed to the merits of the case.

## (1)

Mr. Crews raises nine points in his application filed in proper person. The first five of these contentions may be treated together and summarized as follows:

1. His examination at Patuxent Institution was made by two institutional employees, Giovanni Croce and Louis M. Flo-

---

ing his application, and wrote this Court on November 8, 1965, to discover the present status of the case. "If the case is still open," Mr. Toscani wrote, "I would come to Annapolis if necessary, and obtain all the required information to prepare a brief." However, on November 22, 1965, Mr. Toscani informed the Court he had, "discovered that the Petitioner may be in the process of retaining private counsel" and asked that disposition of the case be postponed until it was certain whether private counsel were retained or not.

Mr. Toscani made continued attempts to learn Mr. Crews' wishes concerning counsel, but the applicant made no decision. On November 1, 1966, Mr. Toscani wrote Mr. Crews at Jessups: "Dear Mr. Crews: I wrote you on October 5, 1966 asking whether you still desired my services or not. I mentioned in the letter that your case was about to be considered by the Court of Appeals and that it was necessary that I know what your intentions were in the matter. To date I have not received a reply and I cannot truly tell what you intend to do. I would appreciate your doing me the courtesy of letting me know one way or another. If I do not hear from you within seven days from the date of this letter I will assume that my services are no longer desired by you. Very truly yours, s/E. Edward Toscani."

Finally on November 8, 1966, Mr. Toscani wrote this Court that he had talked with Mr. Crews by telephone and that Mr. Crews "advises me that he does not know exactly what he wants to pursue at this time."

All correspondence relating to the appointment of counsel, which has been received by this Court subsequent to our receiving the record, has been added to and made part of the record in this case.

renzo, neither of whom were licensed in Maryland as a psychologist or psychiatrist.

2. Because of the alleged lack of qualifications of these two employees, the resulting diagnosis and report classifying him as a defective delinquent is invalid and should not have been admitted into evidence at trial.

3. The applicant was deprived of his liberty because of fraud, false representations, false pretenses and deceit of the two employees mentioned.

The short answer to these contentions is that they were not made below, and therefore, cannot be considered on this application for leave to appeal. *Herrman v. Director*, 229 Md. 613, 182 A. 2d 351 (1962) ; *McDonough v. Director*, 229 Md. 626, 183 A. 2d 368 (1962) ; *Elliott v. Director*, 232 Md. 615, 192 A. 2d 501 (1963). Contrary to the applicant's allegations, moreover, the report is not signed by Giovanni Croce. It is signed by "Joe R. Cantrell, M.D. Staff Psychiatrist"; "Louis M. Florenzo, Psychologist"; and "Domingo C. Sorongen, M.D."; as well as Dr. Harold M. Boslow, Director of Patuxent Institution. The record discloses no objection to the qualifications of these men and no evidence whatsoever to impugn their professional competence.[2] Nor is there a shred of evidence that any of them or Dr. Croce acted fraudulently, falsely or deceitfully.

### (2)

In his sixth contention, the applicant claims that the Circuit Court erred in permitting Dr. Croce, the Associate Director of Patuxent and the chief of its Psychiatric Department, to testify as an expert witness concerning the applicant's mental condition. The basis of the applicant's objection is that Dr. Croce was not licensed to practice medicine in the State of Maryland. We hold that the trial court did not abuse its discretion in admitting the opinion testimony of Dr. Croce.

The common law does not require that an expert witness

---

2. In any event, we have previously held that the Patuxent staff psychologist—in fact Dr. Florenzo, whose competence is challenged by the applicant—need not be certified pursuant to Article 43, secs. 619 and 620. Caplin v. Director, 244 Md. 103, 106, 223 A. 2d 166, 168 (1966).

on a medical subject shall be a person licensed to practice medicine. *Wilson v. State,* 243 Ala. 1, 8 So. 2d 422 (1942) ; 2 Wigmore, *Evidence,* sec. 569 and cases cited therein. In Maryland this requirement has not been introduced by statute in respect to defective delinquent proceedings.

We believe the Court of Appeals for the District of Columbia Circuit aptly stated the proper view concerning the competency of medical experts in *Jenkins v. United States,* 113 U. S. App. D. C. 300, 307, 307 F. 2d 637, 644 (1962) :

> "The kinds of witnesses whose opinions courts have received, *even though they lacked medical training and would not be permitted by law to treat the conditions they described,* are legion. The principle to be distilled from the cases is plain: if experience or training enables a proffered expert witness to form an opinion which would aid the jury, in the absence of some countervailing consideration, his testimony will be received."

Our predecessors agreed with this principle when they defined "medical experts" merely as "persons possessing technical knowledge in relation to matters with which the mass of mankind are supposed not to be acquainted." *Ager v. Baltimore Transit Co.,* 213 Md. 414, 420, 132 A. 2d 469, 472 (1957).

The crucial factors in determining the admissibility of any expert testimony is the actual experience of the witness and the probable probative value of his opinion. Provided the witness' other professional experience qualifies him as an expert in the field of mental science and disease, he is competent to render an opinion on that subject in our courts, even though he is not licensed to practice medicine in Maryland.

The applicant does not question the scientific competence of Dr. Croce, and indeed, it is impeccable.[3] It was within the un-

---

**3.** The evidence introduced at trial showed that Dr. Croce was graduated from medical school in Rome in 1946, served as a general practitioner in South America from 1946 to 1955, served his internship at Providence Hospital in Seattle, Washington in 1957, spent his residency in psychiatry at Sheppard and Enoch Pratt Hospital from 1958 to 1961, was a member of the Psychosomatic Clinic at

abused discretion of the trial judge to permit him to testify. Cf. *State v. Tull,* 240 Md. 49, 212 A. 2d 729 (1965); *Carbone v. Warburton,* 11 N. J. 418, 94 A. 2d 680 (Brennan, J., 1953).

### (3)

The applicant's seventh contention is that the trial court erred in instructing the jury that the applicant had the burden of proving he was not a defective delinquent and not that the State had this burden. The allegation, if true, would plainly be grounds for reversal. But the allegation is false. The record shows that Judge Dyer gave the correct instruction:

> "The burden is upon the plaintiff, *in this case the State of Maryland, to establish by a fair preponderance of the evidence,* which is the same weight of evidence as required in other civil cases; and not proof beyond a reasonable doubt, as required in criminal cases; *that the defendant is a defective delinquent.* If the proof fails to establish any essential element of the plaintiff's case by a preponderance of the evidence, then you should find for the defendant." (Emphasis supplied).

See *Purks v. State,* 226 Md. 43, 171 A. 2d 726 (1961).

### (4)

The applicant's eighth contention alleges bias on the part of the trial judge in sustaining all objections made by the State and otherwise indicating that he believed the defendant to be a defective delinquent. This allegation amounts only to a general conclusion which is insufficient to comply with Maryland Rule 894 a 2 a. *Faulkner v. Director,* 230 Md. 632, 187 A. 2d 473 (1963). It is evident from our review of the entire testimony, however, that the applicant is referring to the opening charge of the trial court. It was there implied that the crimes

Johns Hopkins Hospital in 1961, served as a consultant at Phipps Clinic in 1962, worked in psychotherapy at a Norwich, Connecticut hospital in 1963, and in 1963 through 1964 was an Instructor in Psychiatry at the Johns Hopkins Hospital, a consultant to the City Hospital in Baltimore and the Maryland Children's Center and a member of the American Psychiatric Association.

of false pretenses, for which the applicant was convicted could constitute "anti-social behavior" amounting to a "danger to society" under Article 31B, sec. 5.[4] The applicant's attorney properly reserved an objection to this charge on the grounds that it prejudiced the jury against the applicant. We do not believe that the applicant was materially prejudiced by this remark. The trial court did not say that the crimes *did constitute* "anti-social behavior," or that the applicant's behavior, in fact, demonstrated "an actual danger to society." Our review of the record in this case does not show that this statement in any way prejudiced the jury against the applicant so as to deprive him of a fair and impartial trial. *Bryant v. State*, 207 Md. 565, 585, 115 A. 2d 502, 511 (1955). Any prejudice which may have resulted—and we believe none did — was cured by the judge's final instructions, which advised the jury not to accept his prior statement as a standard "because it is not my function to say that forgery is anti-social behavior." Cf. *Dresbach v. State*, 228 Md. 451, 180 A. 2d 299 (1962).

## (5)

The applicant's final point is that the State's Attorney wrongly argued to the jury that the applicant would be promptly released by the Patuxent Institution Board of Review if he was not found to be a defective delinquent. Article 31B, sec. 9, of course, provides that if the defendant is found not to be a defective delinquent, the court shall order him returned to the custody of the Department of Correction. No objection was made at trial to the statements to which complaint is now made. Failure to object to remarks made in a closing argument will constitute a waiver of the point. Cf. *Shoemaker v. State*, 228 Md. 462, 467, 180 A. 2d 682, 684 (1962).

For the reasons above stated, the application for leave to appeal must be denied.

*Application denied.*

---

4. The court's words were: [The defendant] "was convicted and sentenced September 24, I believe, of 1963 in this Court, the Circuit Court for Harford County, on two charges of false pretenses. So you see that the danger to society is not physical danger necessarily. It is the criminal activity or anti-social behavior, and any crime not crimes of violence can be considered."