581 A.2d 9

**STATE of Maryland**

v.

**James Deon BRICKER.**

**No. 164, Sept. Term, 1989.**

Court of Appeals of Maryland.

Oct. 29, 1990.

88

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, Md., for petitioner.

Bradford C. Peabody, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, Md., for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

CHASANOW, Judge.

On November 17, 1988, James Deon Bricker was convicted of two counts of third degree sexual offense and two counts of assault and battery. Bricker was sentenced to two consecutive 10 year prison terms for the sexual offenses. On appeal, the Court of Special Appeals reversed the convictions and remanded the case for a new trial. *Bricker v. State*, 80 Md.App. 532, 565 A.2d 340 (1989). We granted certiorari to determine whether the trial court, McCullough, J., correctly ruled that Dr. Edward Schultze did not meet the statutory qualifications of an expert witness competent to testify on the "ultimate issue" of Bricker's criminal responsibility.

The facts are basically undisputed. The resolution of the controversy hinges instead on statutory interpretation. At

trial, Bricker's counsel, with the primary goal of having the witness designated as an expert, called Dr. Schultze to testify. Schultze was principal of the Leary School in Virginia, where Bricker had been a student approximately one year prior to his arrest. The witness stated that he earned a bachelor's degree in behavioral and social sciences from the University of Maryland, a master's degree in psychology from the University of Virginia, a master's degree in vocational education for the handicapped from Virginia Tech, and a doctorate of education in special education from Johns Hopkins University. Schultze further testified that he was neither a practicing psychologist nor a member of the American Psychological Association. In addition, Schultze was not licensed as a psychologist in Maryland or Virginia.

Defense counsel attempted to have Dr. Schultze qualified as an "expert in the area of handicapped, such as mental retardation" with the intention of having Schultze give his opinion that Bricker was not criminally responsible for his conduct. The following exchange took place:

"[Defense Counsel]: ... I am going to argue to the jury insanity.

[The Court]: How are you going to argue insanity if you don't have any expert saying that he was insane at the time? Don't you have to have some medical expert get up here and say that he was not responsible because at the time he could not appreciate the criminality of his actions and conform his conduct to the level of the law?

[Defense Counsel]: What we are dealing with is mental retardation here as opposed to your straight old-fashion insanity, mental disorder. That is what we are talking about. Not criminally responsible."

The trial court would not allow Dr. Schultze to testify before the jury regarding the issue of criminal responsibility because the witness was not licensed as a psychologist in Maryland or any other state. The judge did, however,

permit him to proffer his opinion for the record outside the presence of the jury.

Schultze opined that Bricker's ability to determine right from wrong was "questionable." He stated further that a mild to moderate degree of mental retardation made Bricker incapable of comprehending the criminality of his conduct. The witness based his opinion on personal observations and the results of various Wechsler intelligence quotient (I.Q.) tests (which Schultze did not personally administer). The trial court ruled that there was insufficient evidence to generate the question of whether Bricker, due to his mental retardation, was not criminally responsible for his actions. The jury was specifically instructed not to consider the matter in its deliberations, since no evidence had been introduced to show that the defendant was not criminally responsible.

The issue before this Court is whether a nonresident psychologist who does not meet the licensing criteria as set forth in the appropriate Maryland statutes is qualified to testify as an expert and render an opinion on a defendant's lack of criminal responsibility by reason of mental retardation. We conclude that, before a witness may be permitted to testify as an expert on the "ultimate issue" of criminal responsibility, the witness must meet the minimum statutory standards. We explain.

According to Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 9–120, a "psychologist licensed under the 'Maryland Psychologists Act' *and* qualified as an expert witness may testify on ultimate issues, including insanity, competency to stand trial, and matters within the scope of that psychologist's special knowledge, in any case in any court. . . ." (emphasis added).[1] The Maryland Psychologists Act states in pertinent part:

---

[1]. For a general discussion on psychologist's testimony *see* Comment, *The Psychologist as Expert Witness: Science in the Courtroom?*, 38 Md.L.Rev. 539 (1979).

"(a) *In general.*—To qualify for a license,[2] an applicant shall be an individual who meets the requirements of this section....

(d) *Education.*—The applicant shall have a doctoral degree that:

(1) Is from an accredited college or university and based on a program of studies whose content was primarily psychological; or

(2) Is based on a program of studies judged by the Board[3] to be substantially equivalent in subject matter and extent of training to a doctoral degree in psychology from an accredited college or university....

(f) *Experience.*—The applicant shall have at least 2 years of professional supervised experience in psychology that is approved by the Board. At least 1 year of this required experience shall have occurred after the doctoral degree is awarded." (Footnotes added).

Maryland Code (1981, 1986 Repl.Vol.), Health Occupations Article, § 16–302.

There is an exception for nonresidents which states,

"The Board may authorize an unlicensed individual to practice psychology, subject to any limitations the Board imposes, if:

(1) The Board finds that the circumstances warrant; and

(2) The individual:

(i) Is not a resident of this State; and

(ii) Meets the qualifications, other than residence and examination, for a license."

Md.Code (1981, 1986 Repl.Vol., 1990 Cum Supp.), Health Occ. Art., § 16–301(d).

---

**2.** A license is required before an individual may practice psychology in Maryland. Maryland Code (1981, 1986 Repl.Vol., 1990 Cum.Supp.), Health Occupations Article, § 16–301.

**3.** The "Board" refers to the State Board of Examiners of Psychologists.

As stated *supra,* Dr. Schultze was not licensed in Maryland. Although this is important to note, this is not necessarily the determinative factor in the assessment of his competence to testify regarding the "ultimate issue" at trial. The Court of Special Appeals, expressing its reluctance to create a bright line test dependent solely on the existence of a Maryland license, stated: "[w]e hesitate to establish a rigid rule that would automatically disqualify a psychologist from giving an opinion on mental retardation. The absence of a license, in and of itself, does not detract from one's competency." *Bricker,* 80 Md.App. at 544, 565 A.2d at 346.

■ When interpreting a statute, the starting point is the wording of the relevant provisions. If "the language in question [is] so clearly consistent with apparent purpose (and not productive of any absurd result) ... further research [is] unnecessary." *Kaczorowski v. City of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 633 (1987). In the event that ambiguity clouds the precise application of the statute, the cardinal rule of statutory construction is to ascertain and effectuate legislative intent. *Taxiera v. Malkus,* 320 Md. 471, 480, 578 A.2d 761, 765 (1990); *Harford County v. University,* 318 Md. 525, 529, 569 A.2d 649, 651 (1990); *Jones v. State,* 311 Md. 398, 405, 535 A.2d 471, 474 (1988); *In re Ramont K.,* 305 Md. 482, 484, 505 A.2d 507, 508 (1986). To perform this task, legislative intent should be gleaned first from the phrasing of the statute itself, giving the words their "ordinary and popularly understood meaning, absent a manifest contrary legislative intention." *In re Arnold M.,* 298 Md. 515, 520, 471 A.2d 313, 315 (1984). *See also Jones,* 311 Md. at 405, 535 A.2d at 474. When engaging in the interpretive process, however, the purpose, aim or policy of the legislature cannot be disregarded. *Taxiera,* 320 Md. at 480, 578 A.2d at 765; *Harford County v. University,* 318 Md. at 529, 569 A.2d at 651; *Kaczorowski,* 309 Md. at 513, 525 A.2d at 632. Resultant conclusions are to be reasonable, logical and consistent with common sense. *Harford County v. University,* 318 Md. at 529–30,

569 A.2d at 651; *Potter v. Bethesda Fire Dept.*, 309 Md. 347, 353, 524 A.2d 61, 64 (1987).

When several statutes are *in pari materia,* any interpretation must be made with full awareness of all the relevant enactments. *Farmers & Merchants Bank v. Schlossberg,* 306 Md. 48, 56, 507 A.2d 172, 176 (1986). It is presumed that the General Assembly acted with full knowledge of prior legislation and intended statutes that affect the same subject matter to blend into a consistent and harmonious body of law. *Id.* at 61, 507 A.2d at 178; *Ramont,* 305 Md. at 485, 505 A.2d at 508. Therefore, various consistent and related enactments, although made at different times and without reference to one another, nevertheless should be harmonized as much as possible. *Taxiera,* 320 Md. at 481, 578 A.2d at 765; *Farmers & Merchants Bank,* 306 Md. at 56, 507 A.2d at 176; *Bridges v. Nicely,* 304 Md. 1, 10, 497 A.2d 142, 146 (1985).

To properly distill section 9–120, it is imperative that it be read in an unadulterated yet harmonious fashion with the Maryland Psychologists Act.[4] Based on the statutory language, there is but one conclusion: The legislature intended that psychologists who testify as experts about a defendant's criminal responsibility must fulfill the Maryland license requirements.

Among the requirements for a psychologist's license, as enumerated in the Maryland Psychologists Act, are a doctoral degree in psychology and at least two years of professional experience in psychology,[5] as stated *supra.* The legislature specifically provided that a nonresident psychologist is entitled to reciprocity[6] in Maryland only if the

---

4. Md.Code (1981, 1986 Repl.Vol., 1990 Cum.Supp.), Health Occ. Art., §§ 16–101 to 16–502.

5. Section 16–302.

6. Reciprocity signifies a relationship between states whereby each gives citizens of the other certain privileges that its own citizens enjoy. *Black's Law Dictionary,* 1142 (5th ed. 1979). Such recognition is a

"individual is licensed or certified as a psychologist in any other state"[7] and, among other things, fulfills the Maryland licensing requirements.[8] Dr. Schultze met neither of these standards. He was not licensed in Virginia, did not earn a doctoral degree in psychology and was not a practicing psychologist. Thus, the Board would not have granted Dr. Schultze a reciprocal psychologist's license to practice in Maryland.

Statutory license requirements often are useful guidelines to determine whether a psychologist should be permitted to testify as an expert. In *Jenkins v. United States*, 307 F.2d 637, 645 (D.C.Cir.1962) (en banc), the ultimate decision on admission of psychologist's testimony was found properly left to the discretion of the trial court. Since "no statutory criteria for licensing psychologists" existed in the District of Columbia, the court looked to the American Psychological Association's list of approved graduate training programs for guidance when evaluating the witness' credentials. In *Matter of Wellington*, 34 Ill.App.3d 515, 340 N.E.2d 31 (1975) (a proceeding for commitment to hospitalization), the court compared the witness/psychologist's credentials to the requirements for an Illinois psychol-

---

legislative policy matter and a form of comity between states. *Fales v. Commission on Licensure to Prac.Heal.Art,* 275 A.2d 238, 240 (D.C.App. 1971).

7. Section 16–305(a).

8. Section 16–305. The text reads in full:
"Reciprocity.
(a) *In general.*—Subject to the provisions of this section, the Board may waive any examination requirement of this title for an individual who is licensed or certified as a psychologist in any other state.
(b) *Conditions.*—The Board may grant a waiver under this section only if the applicant:
(1) Pays the application fee required by the Board under § 16–303 of this subtitle; and
(2) Provides adequate evidence that the applicant:
(i) Meets the qualifications otherwise required by this title; and
(ii) Became licensed or certified in the other state under requirements *substantially equivalent to the licensing requirements of this title."* (Emphasis added).

ogist's certificate of registration, which called for a doctoral degree in psychology and two years of professional experience. The witness lacked the necessary qualifications, and it was determined that he could not properly be termed an expert.

■ The designation of a witness as an expert is a subject of broad judicial discretion in most instances. *Simmons v. State*, 313 Md. 33, 41, 542 A.2d 1258, 1262 (1988); *Johnson v. State*, 303 Md. 487, 515, 495 A.2d 1, 15 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Radman v. Harold*, 279 Md. 167, 173, 367 A.2d 472, 476 (1977). When there is a statute directly on point, however, the expert must meet the enumerated qualifications. A psychiatrist who was not licensed in Maryland nevertheless was allowed to testify as an expert in a "defective delinquency" proceeding. *Crews v. Director*, 245 Md. 174, 225 A.2d 436 (1967). We explained that the common law does not require a medical expert witness to be licensed. This Court further stated that "[i]n Maryland this requirement has not been introduced by statute ..." *Id.* at 179, 225 A.2d at 438, thereby implying that the result likely would have been different if a statute had set forth minimum criteria for an expert in a particular situation. Similarly, in *People v. Lopez*, 126 Misc.2d 1072, 484 N.Y.S.2d 974, 977–79 (1985), the New York Supreme Court applied statutory criteria to determine admissibility of expert testimony. The court in a competency hearing could only consider the testimony of a "qualified psychiatrist." This included a psychiatrist who was "eligible to be board certified." By assessing legislative intent, the court determined that an eligible psychiatrist was one who met the psychiatric board's requirements for specialized training.

Prior to the enactment of Md.Code (1974, 1989 Repl.Vol.), Cts. & Jud.Proc. Art., § 9–120, although there was no statute specifically addressing the issue, psychologists had not been permitted to testify in a Maryland courtroom about the question of criminal responsibility. In *State v. Tull*, 240 Md. 49, 55–57, 212 A.2d 729, 732–33 (1965), this

Court acknowledged that jurisdictions were divided on whether a psychologist is qualified to render an expert opinion. Without definitively answering the question, the case was decided on other grounds. This reference was interpreted in *Saul v. State,* 6 Md.App. 540, 549–50, 252 A.2d 282, 286–87 (1969), *aff'd on other grounds,* 258 Md. 100, 265 A.2d 178 (1970), where the Court of Special Appeals stated that "an opinion as to the ultimate fact, whether or not the accused is insane ... should be reached by a medical diagnosis. Thus the opinion must be made by a medically trained psychiatrist in order to be admissible in evidence." Without a specific statute on point, Maryland courts would not make an exception for any psychologist. *Spann v. Bees,* 23 Md.App. 313, 320, 327 A.2d 801, 805 (1974), *cert. denied,* 273 Md. 722 (1975) ("Maryland cases do not hold that *some* psychologists are qualified to render expert testimony in the field of mental disorders on the ultimate question as to the existence or not of a mental disease or condition and a causal relationship between such disease or condition and some unlawful act.") We noted in *State v. Williams,* 278 Md. 180, 184, 361 A.2d 122, 125 (1976) that a definitive answer regarding the admissibility of a psychologist's testimony on criminal responsibility had never been given in Maryland. In *Williams,* the Court found that "a psychologist, though otherwise qualified as an expert witness, may not render an opinion on the ultimate issue of defective delinquency...." *Id.* at 187, 361 A.2d at 126.

With the passage of section 9–120,[9] a "qualified" psychologist now may testify on "ultimate issues," including whether the defendant is not criminally responsible for his or her actions. We hold that a psychologist who does not possess the qualifications for licensing set forth in the Maryland Psychologists Act is not qualified to testify as an expert on lack of criminal responsibility as a result of the

9. Chapter 481 of the Acts of 1978.

defendant's mental retardation or a mental disorder under section 9–120.

Since Dr. Schultze did not satisfy the criteria prescribed by the Maryland Psychologists Act, he was ineligible for a Maryland psychologist's license and therefore was unqualified to testify on the issue of Bricker's criminal responsibility. The trial judge did not err in refusing to permit the doctor to testify as an expert before the jury.

■ Under *State v. Conn*, 286 Md. 406, 408 A.2d 700 (1979), a layman (non-expert) may express his or her personal observations, including whether the defendant acted "normal." Clearly, Dr. Schultze could have testified in this capacity. It is improper, however, for a layman to testify on the "ultimate issue" of the defendant's sanity. While " 'normal conduct and abnormal conduct are matters of common knowledge,' " *Id.* at 407, 408 A.2d at 700, (quoting *Carter v. United States*, 252 F.2d 608, 618 (D.C.Cir.1957)), an opinion of a party's mental state and level of comprehension of the consequences of his actions (sanity) may be expressed only by a " ' "medically trained psychiatrist," or, since July 1, 1978,[10] by a certified psychologist.' " *Conn*, 286 Md. at 414, 408 A.2d at 704 (quoting *Gregory v. State*, 40 Md.App. 297, 328, 391 A.2d 437, 456 (1978)) (footnote added). *See also* 6 L. McLain, *Maryland Evidence* § 701.3 (1987).

By differentiating between the type of opinion testimony that is permissibly obtained from a layperson and the opinion on the "ultimate issue" of criminal responsibility properly offered by a qualified expert, this Court in *Conn* accentuated the importance of an expert designation. The layperson may describe acts and behavior that he or she observed and categorize the conduct as normal or abnormal on that basis. By contrast,

---

10. Chapter 481 of the Acts of 1978, now codified at Md.Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Art., § 9–120.

"[an expert] would not be testifying as to his observation of such acts, but at a time perhaps long after the relevant event would be interviewing an individual, administering tests to him, and from this examination then positing his view on the ultimate issue of sanity as of the time of the alleged crime."

*Conn,* 286 Md. at 421, 408 A.2d at 707.

The Court of Special Appeals found that the holding in *Conn* was not dispositive of the issue in Bricker's case for the sole reason that, at the time *Conn* was decided, the definition of criminal responsibility did not include mental retardation.[11] *Bricker,* 80 Md.App. at 539, 565 A.2d at 344. In 1980, the General Assembly amended the statute to include mental retardation in the definition of mental disorder.[12] Presently, the "Criminal responsibility for criminal conduct—Test for insanity" can be found at Maryland Code (1982, 1990 Repl.Vol.), Health—General Article, § 12–108 which states:

"(a) *Test—In general.*—A defendant is not criminally responsible for criminal conduct if, at the time of that conduct, the defendant, because of a mental disorder or mental retardation, lacks substantial capacity:

(1) To appreciate the criminality of that conduct; or

(2) To conform that conduct to the requirements of law."

---

**11.** When *Conn* was decided the test for criminal responsibility was as follows:
"(a) A defendant is not responsible for criminal conduct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct as a result of mental disorder, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms 'mental disorder' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."
Md.Code (1957, 1972 Repl.Vol.), Art. 59, § 25.

**12.** Md.Code (1957, 1979 Repl.Vol., 1981 Cum.Supp.), Art. 59, § 3(f); Chapter 823 of the Acts of 1980.

Based on these statutory changes, the Court of Special Appeals concluded that *Conn* was not controlling, and thus determined that it was acceptable to carve out an exception to the psychologist's license requirement, triggered when the psychologist's testimony will be offered to prove lack of criminal responsibility as related to mental retardation. The court considered this an "exceptional case where a witness, who by reason of an exceptionally wide experience and/or association with the accused, is qualified to testify regarding mental retardation on the same basis as a psychiatrist or a licensed psychologist." *Bricker*, 80 Md.App. at 539, 565 A.2d at 344. The intermediate appellate court then surmised that it is easier to diagnose mental retardation, which it believed "is generally understood by laymen," *Id.* at 543, 565 A.2d at 345, than it is to appraise mental disorder. In comparing an evaluation of lack of criminal responsibility based on mental retardation and one based on mental disorder, the court said:

> "[O]nce mental retardation is established, the sole determination is whether the mental retardation so affected the individual that he or she lacked the capacity to understand the consequences of his or her acts.
>
> In comparison, a determination of criminal responsibility of an individual with a mental disorder involves a more complicated analysis. Once it is established that an individual has a transient mental disorder, it next must be determined whether the individual was affected by the disorder at the time of the crime and, if so, whether the disorder affected the individual's capacity to understand the criminality of his or her act. Arguably, it would be easier to show that a mentally retarded person lacked the capacity for appreciation because of his or her low intelligence."

*Id.* at 544, 565 A.2d at 346 (citing Menninger, *Mental Retardation and Criminal Responsibility: Some Thoughts on the Idiocy Defense*, 8 Int'l J.L. & Psychiatry 343, 349 (1986)).

The Court of Special Appeals found that "a more detailed evaluation of numerous symptoms is necessary to diagnose the disordered thinking or distorted perceptions of mental disorders," *Id.* at 543, 565 A.2d at 346, and thus allowed different minimum criteria that a psychologist must satisfy before being designated an expert, depending on the type of mental condition allegedly affecting the defendant. We disagree.

The diagnosis and evaluation of mentally retarded defendants is not a simple task.[13] Mental retardation is characterized as a learning disorder, and affected persons are classified in one of four categories: mild, moderate, severe, and profound. Over 200 syndromes fall under the general category of mental retardation. *See* Ellis & Luckasson, *Mentally Retarded Criminal Defendants*, 53 Geo.Wash.L. Rev. 414, 427, n. 70 (1985) (citing Haywood, *Reaction Comment* in *The Mentally Retarded Citizen and the Law* 667 (1976)). In addition, mental disorders and mental retardation are not necessarily mutually exclusive. *Id.* at 425. It is estimated that 30 percent of all mentally retarded individuals also suffer from some sort of mental illness. *Id.* (citing F. Menolascino, *Challenges in Mental Retardation: Progressive Ideology and Services* 126–27 (1977)). There is more to evaluating a mentally retarded defendant than merely giving an I.Q. test. "Systematic assessment requires the thoughtful selection and administration of valid examination instruments together with careful observation, interviewing, and analysis of all the data by a professional with proper training and experience." Ellis & Luckasson, *supra,* at 488.

---

**13.** "Thorough assessment of the abilities and weaknesses of a mentally retarded defendant can result in information of tremendous assistance to a court. However, the assessment process requires great care and professional skill and any proffered results must be viewed with caution. At many points during the process, seemingly minor departures from good practice can severely limit the utility or validity of an assessment report." Ellis & Luckasson, *Mentally Retarded Criminal Defendants,* 53 Geo.Wash.L.Rev. 414, 486 (1985).

A sliding scale for credentials should not be forged from a cursory reading of the statute. The phraseology of section 9–120 does not indicate any legislative intent to distinguish between a psychologist who testifies that a mental *disorder* rendered a defendant not criminally responsible, and one who attributes a defendant's lack of criminal responsibility to the defendant's mental *retardation.* It is proper to conclude that the General Assembly made the statutory change, whereby mental retardation was included in the test for insanity, with the intent to harmoniously integrate all the pertinent laws. A strained manipulation of the statute is neither required nor desired in the interpretive process.

For the aforementioned reasons, we find that the trial court properly prohibited Dr. Schultze from testifying before the jury on the "ultimate issue" of whether the defendant was not criminally responsible for his conduct and, consequently, we reverse the judgment of the Court of Special Appeals. A nonresident psychologist must meet the same criteria that is required of a psychologist licensed in the state of Maryland before he or she will be permitted to testify as an expert on the issue of criminal responsibility.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REINSTATE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY. RESPONDENT TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.